EXHIBIT C

Sifuentes

# SUBCONTRACT AGREEMENT

This agreement made as of the <u>1st</u> day of <u>June</u>, 20<u>09</u> between:

**Raul Sifuentes**                                             here in after referred to as "Subcontractor."
<u>108 Carter Ave./ P.O. Box 966</u>
<u>Pearson, GA  31642</u>
<u>912-381-1477</u>

and

**Hampshire Roofing Co., LLC**
**442 FM 421**
**Lumberton, TX  77657**
**409-755-3215**

The parties here to, in consideration of the covenants and agreements herein contained, agree as follows:

ARTICLE I.   Subcontractor will and shall furnish, in strict accordance with plans and specifications prepared by <u>Hampshire Roofing Co., LLC</u> hereinafter designated "Engineer" or "Architect", for the construction of <u>Installation of ReRoof America framing system labor only</u> for <u>Beaumont Independent School District</u> (hereinafter designated Owner) at <u>Smith Middle School,</u>

The contract and general conditions thereof between Contractor and Owner relating to said work and the plans and specifications herein referred to are made a part of this agreement as if fully set out herein. Said contract and plans and specifications are on file at the main office of Contractor and usually also at his office on the project and available to Subcontractor for examination.

In the event of a conflict between the plans and specifications and this agreement, this agreement shall prevail; provided, however, this provision shall never be construed to require less of Subcontractor in the performance of the work subcontracted hereunder than is required of Contractor under the contract between Contractor and Owner and said plans and specifications. If is the intention of the parties that Subcontractor shall assume all of the liability and obligations for the particular work subcontracted hereunder that First Party has assumed in the contract with said Owner and the plans and specifications insofar as same are applicable to the particular work subcontracted hereunder.

Such additional drawings and explanations as may be necessary to detail and illustrate the work to be done are to be furnished by the Engineer or Architect; and Subcontractor agrees to conform to and abide by same so far as they may be consistent with the purpose and intent of the original drawings and provisions.

ARTICLE II.   Subcontractor shall, at his/her own expense, provide and deliver all materials as above specified, all tools, implements, machinery and scaffolding of every sort and furnish all labor and supervision necessary to properly execute the work covered by this Agreement, including all things necessary or usual in work of this kind to make a fully complete, substantial and workmanlike job, perfect in every respect to the satisfaction of authorized representatives of the Owner and Contractor.

ARTICLE III.   Subcontractor agrees that all work performed and materials furnished by him/her shall strictly comply with the laws and ordinances in force in the locality in which the work is located and that he/she will comply promptly with all rules, regulations, and orders of Bureaus or Departments of Local, State, or National Governments, or of the Owner and will furnish all labor and materials thus required in the completion of the work herein contracted for, free of expense to the Contractor whether same are or are not specifically provided for in the plans or specifications.

1

ARTICLE IV.    Subcontractor shall be bound to Contractor for all of the terms and provisions of the contract and general conditions thereof between Owner and Contractor insofar as same relate to the work subcontracted hereunder in the same manner as Contractor is bound to the Owner with like force and effect and in all respects as if same were set out in full herein. Subcontractor assumes all of the liability and obligations for the particular work subcontracted hereunder that Contractor has assumed in said contract with the Owner.

ARTICLE V.    Subcontractor shall procure and pay for all permits, licenses, royalties, right-of-way, and fees of similar nature, required for the performance of this Agreement, whether from Departments of Government or from private corporations or individuals, unless stated in the specifications to be provided and furnished by the Owner.

The Subcontractor agrees to protect and save harmless the Contractor and Owner from all and every demand for damages, royalties and fees on any patented article used by him/her in the work done or furnished by him/her under this agreement; provided, however, if any patented material, machinery, process or invention is clearly required by the specifications and which is not readily available on the open market and no provision is made in the specifications for procuring of the rights of use, Subcontractor shall notify the Contractor as soon as the matter comes to his/her attention so that satisfactory adjustment of cost can be made before use of the patented article.

ARTICLE VI.    Subcontractor shall provide sufficient, safe and proper facilities for the inspection by the authorized representatives of Owner and Contractor of work and materials being furnished by Subcontractor hereunder. No such inspection shall ever relieve Subcontractor of any obligation hereunder and shall not constitute a waiver of any defective material or workmanship. Subcontractor shall, within twenty-four (24) hours after receiving written notice from the Contractor to that effect, proceed to remove from the work and the site all materials condemned by Contractor, Owner, Engineer or Architect, whether worked or non-worked, and to dismantle all portions of the work which may by like notice, be condemned as unsound or improper, or as in any way failing to conform to the drawings and specifications and shall make good all work damaged or destroyed thereby. In the event it is impractical to remove work, condemned as above, Contractor reserves the right to order the condemned work left in place at a suitable reduction in price.

ARTICLE VII.    Subcontractor shall cover, protect and exercise due diligence to secure his/her work from injury, furnishing and installing such temporary guards, coverings, or other materials as may be required and shall be liable for and bear the cost of repairing and replacing damaged work to the satisfaction of authorized representatives or Owner and Contractor. In like manner Subcontractor will be liable for and bear cost of repairing and replacing any work and material, belonging to others, which he/she damages.

ARTICLE VIII.    Subcontractor agrees that changes or alterations may be required in the work described in the plans and specifications, but that he/she will make no changes or alterations except upon written instructions from the Contractor. In the event any particular change or alteration is permitted under the terms of the contract between Contractor and the Owner without additional compensation, Contractor shall not be liable or obligated to Subcontractor in any manner or means whatsoever unless the circumstances are such that the Owner shall be liable to Contractor for such changes or alterations. In the event any change or alterations involve a change in the amount of money to be paid under the agreement, a change order shall be prepared stating the amount of money agreed on for the change. Should Contractor and Subcontractor not agree to the amount to be paid or allowed, work shall nevertheless proceed under the written instructions given to Subcontractor and the determination of the amount shall be referred to arbitration as hereinafter provided. No claims for additional payment will be allowed unless the work is first authorized in writing as above provided.

ARTICLE IX.    Subcontractor hereby acknowledges he/she is familiar with the commitment made by Contractor to Owner regarding time of completing the entire work and that he/she is equipped with sufficient tools, materials, and man-power to fully and completely perform the work herein undertaken without delaying Contractor or any of his other Subcontractors in fulfilling the committed time for completion. Subcontractor waives the requirement of written notice and agrees to note the progress of the work so that he/she will know when it is possible for him/her to begin installation of his/her work and will have all of his materials designed, purchased, manufactured, assembled, and ready for installation whenever conditions permit their installation. Contractor shall have the right at

all times to coordinate the work of Subcontractor with the work of Contractor and other Subcontractors. Subcontractor understands that in the event Contractor is unable to complete the entire work in the required time as provided in the contract between Contractor and Owner, Contractor will suffer severe financial losses and Subcontractor agrees to reimburse Contractor for all or such portion of Contractor's loss (including liquidated damages to Owner) as is attributable to Subcontractor's failure to complete portions or all of his work in the time stipulated.

ARTICLE X.   Subcontractor agrees to employ only competent and skillful people to do the work; and that whenever information writing by the Contractor that any worker or workers, in his opinion, are incompetent or unable to work in harmony with other workers on the job, such worker or workers shall be forthwith removed from the work and not be re-employed thereon without Contractor's written consent.

ARTICLE XI.  Subcontractor hereby agrees that Contractor shall have no liability for and hereby agrees to save, indemnity and keep harmless Contractor and Owner from all suits, claims, demands and expenses of every kind and character arising out of or in connection with work to be performed by Subcontractor, his/her agents, or employees under this Agreement. Subcontractor shall be responsible to all other contractors employed on the work for all damage to material, persons, or property, or for loss due to his/her negligence or failure in improperly fitting his/her materials or performing his/her work, or his/her failure to finish such work at the proper time, thereby preventing other portions of the work being finished at the proper time, or for loss or damage from any other cause arising from his/her operations. Subcontractor further agrees to save and indemnify and keep harmless Contractor from any and all suits, claims, demands, costs and expenses for which Contractor is responsible to the Owner under the provisions of the contract between Contractor and the Owner insofar as same arise out of or are caused or result from Subcontractor's acts or omissions under this Subcontract. Subcontractor shall pay all reasonable expenses of Contractor in defending, handling and settling such suits, claims, and demands. Subcontractor shall notify Contractor immediately of any claim made against Subcontractor on account of any of the causes herein above referred to.

ARTICLE XII. Subcontractor agrees from time to time, as conditions of the work require, to clean up rubbish and debris accumulated by him/her, and further agrees that before final payment is made he/she will thoroughly clean up and remove from the site all debris, rubbish, and trash of every kind, tools, equipment, etc., produced or used in his/her operation. All finished surfaces everywhere are to be left in an undamaged condition and free from all trace of his/her operations.

ARTICLE XIII. Subcontractor shall bear his/her proportionate share of the cost of the following Contractor's job facilities: office, telephone, heat, watchman, waterboys, ice, water, drinking cups and temporary toilets. Such of the above as Subcontractor elects to furnish at his own expense will not be charged for.

ARTICLE XIV. Subcontractor shall not sublet, assign or transfer this agreement or any interest therein nor assign any compensation payable hereunder without the written consent of Contractor. No such subcontract, transfer or assignment, if consented to, shall operate to enlarge the obligations or diminish the rights of Contractor hereunder and shall not, under any circumstances, relieve Subcontractor of any of his liabilities and obligations under this contract.

ARTICLE XV.    Subcontractor shall take out, maintain in force and pay for insurance wherever limits are stated in **Standard Limits**.

Where in **Standard Limits** indicates kind of insurance, that such kinds of insurance will be carried by Subcontractor, Subcontractor shall file certificates of such insurance with Contractor before starting work on the job. Upon request from the Contractor, the Contractor or Owner or both of them shall be named as insured in any of such policies as their respective interests may appear. Such certificates shall show the amounts and limits of liability as stated in force and dates of expirations of policies and shall also contain an agreement by the insurance carrier indicating that no policy will be canceled prior to the expiration date shown without first giving Contractor ten days' written notice. In the event notice of cancellation is given, Subcontractor agrees immediately upon request to replace the policy so canceled. The failure of Contractor to require Subcontractor to obtain or maintain in force any of such insurance, shall never be construed to give any person, firm or corporation a right of action against Contractor. Subcontractor shall have the right, but shall not be obligated to secure any additional kinds of insurance or any policies containing limits in excess of the amounts specified as deemed necessary for his/her protection.

ARTICLE XVI.   Should Subcontractor at any time refuse or neglect to supply a sufficient, properly skilled workers or materials of the proper quality or fail in any respect to prosecute the work with promptness and diligence, or be guilty of any violation of any of the terms of this agreement, or become insolvent, or file a petition in bankruptcy or be adjudged a bankrupt, or make a general assignment for benefit of creditors, or a receiver be appointed for a substantial portion of the assets of Subcontractor, then in any such event Contractor shall have the right at its option upon three (3) days written notice to Subcontractor to take over the work subcontracted hereunder and to proceed to do or cause to be done the remaining work subcontracted hereunder. Such taking over by Contractor shall be effective in the manner and at the time specified in said notice and shall be without prejudice to any claims which Contractor may have against Subcontractor, and Subcontractor waives all damages by reason thereof. In such event Contractor shall be at liberty to enter upon the premises and take possession for the purpose of completing the work subcontracted by this agreement, of all materials, tools, equipment and appliances thereon; and Contractor or any other party taking over such operations under such circumstances shall have the right to employ such personnel, make such purchases and enter into any and all agreements as may be reasonably required in order to finish the work. In such event Subcontractor shall not be entitled to receive any further payment or compensation under this agreement except as hereinafter set forth in this Article. Contractor shall charge to Subcontractor the entire cost and expense, including a reasonable fee for supervision, of the completion of the work subcontracted hereunder; and Subcontractor shall be fully responsible for damages resulting from delays to the same extent as if Subcontractor had completed such work. If the total of such costs and expenses and of all costs, expenses and damages otherwise incurred or sustained by Contractor chargeable against Subcontractor hereunder shall exceed the unpaid balance of the contract price to Subcontractor hereunder. Subcontractor agrees to pay the difference to Contractor, but if the unpaid balance of the contract price shall exceed the total amount of such costs, expenses and damages, such excess shall be paid by Contractor to Subcontractor after all of the work subcontracted hereunder has been completed and all claims of every kind and character against Subcontractor arising out of or in any manner connected with the performance or non-performance by Subcontractor of such work have been fully and finally determined and paid.

ARTICLE XVII.  Nothing in this Agreement shall be construed as creating the relationship of employer and employee between Contractor and Subcontractor, but Subcontractor shall be deemed at all times an Independent Contractor. Subcontractor warrants he/she is, or will elect to become, an employer within the meaning of the Unemployment Compensation Laws of the State in which the work is being done and shall furnish his/her unemployment registration certificate number to Contractor before he/she starts work.

ARTICLE XVIII. It is mutually agreed between the parties hereto that the sum of money to be paid by Contractor to Subcontractor for said work and/or materials, shall be **Attachment "A"**
subject to additions and deductions as herein before provided, and that such sum will be paid by Contractor, in current funds as follows:

Payment to the extent of **100**% of the value of work done and acceptable materials suitably stored at the site during the calendar month as evidenced by the Engineer's or Architect's estimate will be

paid by Contractor to Subcontractor on or about the 15th day of the following month subject to other provisions of this contract. Subcontractor shall file his/her estimate of value not later than the 1st of each month.

Final payment will be made, subject to the other provisions of this contract, within 30 days after completion of all work subcontracted hereunder and its acceptance by authorized representatives of the Owner and Contractor and after performance by Subcontractor of all of its obligations hereunder.

Before any progress or final payment is made, Subcontractor shall, if required, furnish evidence satisfactory to Contractor that all bills for materials and labor and other obligations theretofore incurred by Subcontractor have been paid in full and that the Owner's premises are free from all liens or claims of every nature resulting from or in any manner arising out of the performance or non-performance by Subcontractor of the work subcontracted hereunder and also evidence that the work has been done strictly in accordance with the requirements of local laws and ordinances. If at any time there shall be evidence of any lien or claim for which, if established, Contractor or Owner or Owner's property might become liable and which is chargeable to Subcontractor, Contractor shall have the right to retain out of any payment then due or thereafter to become due an amount sufficient to completely indemnify Contractor, Owner and Owner's property against all such liens or claims. If at any time the Owner shall make a claim against the Contractor which arises in any manner out of the performance or non-performance of the work subcontracted hereunder. Contractor shall also have the right to retain out of any payment then due or thereafter to become due an amount sufficient to completely indemnify the Contractor against any such claim. Notwithstanding any other provision of this Agreement, Contractor is hereby authorized to retain, without liability for interest, until the final disposition of all claims which are made against Subcontractor, Contractor or Owner and for which Contractor is claimed to be responsible, a sufficient portion of the contract price to protect Contractor for and against any and all such claims and from all loss, cost liability, damage and reasonable expense arising therefrom or in connection therewith.

Should there prove to be any lien or claim after all payments are made. Subcontractor shall refund to Contractor all monies that the latter may be compelled to pay in discharging such lien or claim in consequence of Subcontractor's default, together with all reasonable expenses incurred by Contractor in connection therewith. All provisions for retainage are intended for the sole benefit of Contractor who shall have the right to waive all or any of such provisions.

ARTICLE XIX. No payment made under this agreement by Contractor shall be evidence of the performance, either wholly or in part, by Subcontractor of this agreement, and the final payment shall never be construed to be an acceptance of defective work or improper materials

ARTICLE XX. Subcontractor shall, at his own cost, remedy and make good any defect in his/her work which may appear within twelve (12) months (or such longer time, if any, as is required by the terms of the contract with the Owner or the provisions of the plans and specifications) after completion of the entire work. Should Subcontractor refuse to remedy and make good any such defects within a reasonable time after notice to do so, then Contractor shall have the right to remedy such defects as the expense of Subcontractor who shall pay to Contractor the reasonable amount incurred thereby.

ARTICLE XXI. Where guarantees, maintenance, bonds, working drawings, certified drawings, operating manuals or instructions of manufacturer are required to be furnished, these must be filled with Contractor before invoice for final payment can become due.

ARTICLE XXII. Subcontractor shall, promptly on signing of this Agreement and before any work is done under it, furnish Contractor a bond guaranteeing the faithful performance of all of the provisions of this

contract with a Surety satisfactory to Contractor in the sum of $N/A. Said bond shall be payable at Lumberton, TX, and shall provide that same insures to the benefit of persons, firms or corporations furnishing any materials or performing any labor pursuant to the work subcontracted hereunder subordinate and inferior to the rights of Contractor thereunder and under this Agreement; provided however, that Contractor may at its option waive the furnishing of a bond or waive any of the provisions above required without, in any manner, incurring any liability to any such third person, firm or corporation.

ARTICLE XXIII. In the event Subcontractor and Contractor fail to agree in regard to any matter of thing involved in this contract and which the parties hereto do not promptly adjust and determine, then Subcontractor shall follow written orders from the Contractor with respect thereto; and the matter in dispute shall be referred to a Board of Arbitrators to consist of one person selected by Subcontractor and one selected by Contractor. The two persons so appointed shall select a third arbitrator. In the event either of the parties fails to appoint an arbitrator within ten (10) days after request in writing from the other party to do so, or in the event the two arbitrators so appointed shall fail to appoint a third arbitrator, then in any such event, the arbitrator or arbitrators not so appointed shall be appointed by the Senior District Judge of Hardin County, Texas. The decision of any two of this Board of Arbitrators shall be final and binding on both parties hereto. The arbitrators shall also equitably apportion the expenses of arbitration between the parties; or if no such apportionment is made or considered desirable by the arbitrators, all of such expenses shall be paid by such losing party.

ARTICLE XXIV. The parties agree that, at the time of the execution of this contract, Contractor and Subcontractor are in possession of the same facts with regard to the work site covered by the contract between the Contractor and Owner and of the difficulties which may be encountered in the performance of the work subcontracted hereunder. The parties further agree that Contractor has made no representation to Subcontractor is not relying in accepting this contract upon any statement of any kind made by Contractor or any of its representatives. It is agreed between the parties that any and all amounts of money that may be payable hereunder by one party hereto the other, whether compensation, damages or otherwise, shall be payable at Lumberton, Texas.

The parties hereto for themselves, their heirs, successors, administrators, and assigns do hereby agree to the full and faithful performance of the convenants herein contained.

IN WITNESS WHEREOF the parties to this Agreement have hereunto set their hands and seals the day and year first above written.

IN THE PRESENCE OF:

WITNESS: _Tayrone Walters_

WITNESS: _Bobby Hampshire_

_____
SUBCONTRACTOR

Hampshire Roofing Co., LLC
_____
CONTRACTOR

# Hampshire Roofing Co.

Main Office
442 F.M. 421
Lumberton, Texas 77657
Phone:(409) 755-3215
Fax : (409) 755-0632

1487 S. Fairfield
Pensacola, Florida 32507
Phone: (850) 455-7403
Fax: (850) 455-7404
Florida Lic# CCC1327550

### Attachment "A"

Scope of Work:

Install ReRoof America framing system, Labor Only.

69,000 sq ft X $ 1.50 = $ 103,500.00

We will hold 10% retainage until 30 days after the job is completed.

If you cannot furnish workman's compensation insurance 23% will be withheld from the total contract amount. If we receive an insurance certificate that shows coverage this amount will be reimbursed.